Kuciemba v. Victory Woodworks. You may proceed. Yes, good morning. May it please the court. My name is Martin Zorada and I represent the Kuciembas who are the plaintiffs in this case. I would like to reserve three minutes for rebuttal. Now, I would like to just state the facts of this case, which at this stage must be assumed as true. The employer here, Victory Woodworks, violated the San Francisco health orders by failing to quarantine employees who were exposed to COVID. One or more of those employees was then transferred to the workplace where Mr. Kuciemba worked, had COVID, infected Mr. Kuciemba with COVID, and then Mr. Kuciemba brought COVID back home to his wife, got her seriously ill, and she spent time, weeks, on a ventilator and still suffers from the aftereffects of COVID. And, Your Honors, there's two issues before the court here, really, two main issues. One is liability and one is duty. On liability, we're looking at the distinction between direct injuries and derivative injuries, with direct injuries being compensable in civil workers' compensation exclusivity. Now, fortunately for the court, we have the benefit of the Cease Candies decision, which has just come down from a California appellate court in December of 2021, in which we provided to this court following the briefing. So there is Snyder, which is a California Supreme Court case that applied a bright-line rule for derivative and direct injuries, and that was in fetal cases, injury to a child, an unborn child. And then Cease Candies extended that bright-line rule to a specific factual situation that is on all fours with this case here, meaning an employee bringing COVID back to their spouse, that spouse getting COVID and dying. And that bright-line rule articulated in both Snyder and Cease Candies is that the court is not to look at the factual or causal connection between the injury to the worker and the injury to the non-employee. What the court has to look at is legal causation. And essentially what legal causation is, is we look at the legal elements of the claim and determine whether the non-employee is required to prove as a legal element of their claim, let's say Casey jury instructions, injury to the employee. Now, for loss of consortium, that is a legal element. For wrongful death of the employee, that would also be a legal element. Both of those are derivative claim because the non-employee has to prove the injury or the death to the employee in order to recover. Now the court in Snyder and Cease Candies distinguish that from a situation where there's a direct injury to the non-employees own body. And in that case, and in this case here, it doesn't matter whether Mr. had really bad COVID or was completely asymptomatic and never felt a thing  Kusiemba does not have to prove legally as part of our elements of our cause of action that Mr. Kusiemba suffered from COVID. Her own injuries to her own body are not derived from injuries to his body. And Snyder and Cease Candies made it extremely clear that causal and factual connection will exist, but that would be barking up the wrong tree. And the court should not do that. I assume that this Cease Candy is somewhat of a game changer. It's certainly seemed that way to me. The district court did not have the benefit of this change of games. If we agree with you that Cease Candy means what you say it means, would you then suggest that we vacate and remand to let the district court have at it in first instance to determine what if any effect Cease Candy is going to have on the decision below? Well, Your Honor, this court could do that, but the Cease Candies case is so clear. Everybody says it's clear when they don't want to go back down. But traditionally, and we have something like this, we send it back down. So both sides can have an opportunity to do what they need to do so that we can be fully advised of Cease Candy. You don't think there's any problem at all with with moving forward. But I'd like to have you. The thought came to my mind that if Cease Candy is what you say it is, that we would be well advised to remand. Why would that be inappropriate? Your Honor, it would. There is nothing wrong with doing that. And in fact, if the court chooses to do so, we would invite the court to remand this back to the district court so they consider the effect of Cease Candies. The only thing I would like to point out is just how close. I mean, it's a COVID case. Employee gets COVID because of violations of COVID safety, gives it to her husband who then dies. And it's the same exact issue as the one in this case. But if the court wants to remand, we don't we don't oppose that. If we view that as a legal question, this applicability or inapplicability of the workers' comp, and if we credit your interpretation that ruling in your favor on the workers' comp issue, then you're left with what duty of care and burden? Yes, Your Honor. So I'd like to address now duty of care. Now, the most analogous analogous case to this case is is Kessner. And in Kessner, we had an employee who became a vector that carried a toxic substance, asbestos fibers, back home because the employer violated OSHA regulations that governed how that worker should be protected from asbestos exposure. Those fibers then were breathed in by a family household member who got cancer. And Kessner applied the Roland factors. And there's two baskets to these Roland factors. The first basket is sort of case-specific factors that center on foreseeability. And the second basket is is less case-specific, more general public policy factors. And what I'd like to point out to the to the to the court is that the one under Kessner, the foreseeability is the most important factor. And the district court actually agreed with the plaintiff that foreseeability was on their side. And that's not surprising, given that the whole purpose of the health care orders and the information available to everyone was to limit the spread of COVID. And that's why they're out there. And it's foreseeable, entirely foreseeable, that if an employer violates the the employer in Kessner violated the OSHA orders, that such violation would would lead to exposure to COVID. So foreseeability clearly rests with the plaintiff. The second connected factor to foreseeability is is the connection between plaintiff and defendant. And what the Kessner court did with that factor is they said here the connection is employer, employee, household member. And they actually drew a bright line and they said, we're going to draw the line at household member. The liability line stops at the household member. And so in this case, we have the same exact connection between the plaintiff and defendant. And what the Kessner court said, it's not surprising that an employee goes home at the end of the day. It's a baseline assumption. And therefore, both in Kessner and in this case, the connection is, again, favors the plaintiff. The next point is the certainty of injury, the certainty of injury. And here we have the certainty that there was an injury. It's this would only go against the plaintiff if the injury was like a like a mental distress injury. So here that also favors the plaintiff. And so what we're left with is these three general public policy rolling factors. And that's moral blame, preventing future harm and this kind of catch all of burden on defendant, consequences to community or imposing duty and availability of availability of insurance. I'd like to first talk about moral blame. But I just because I don't I know you want to have some time for rebuttal, but I think that the response from your colleague on the other side is that you fight you cite this Kessler case, right? But or Kessner, and you say that there is this direct line employer, employee, household member. But he points out that in these intervening years, no court has actually applied that allegation. And how does that affect how we apply Kessner? Your Honor, we haven't had a COVID case decided on the basis of duty. What I would point to is the C.S. Candy's case where duty was not an issue. But the court in passing did state that they essentially did not see, you know, that that there was a problem of of duty. Now, that was dicta and stated in passing. What I would say to the court is Kessler is the closest case that we have. Unfortunately, there are no other cases in California. And to the extent this court wants to ask the California Supreme Court on how to deal with this issue, it has the power to do that. What I would. Would you recommend it? I would, Your Honor. I would. We already have the C.S. Candy's case. That's a court of appeal. As as indicated earlier, I see this as a game changer and we have one court of appeal. We're sending it back to a district court judge who has who the California courts do not have to follow. I wonder if we just need to cut to the chase and certify this to the Supreme Court, get the issue before us, because this isn't going to be the first of these cases, as we're going to see. That's correct, Your Honor. The reason I mentioned C.S. Candy's is because that case is likely to be appealed as well. And so both of these cases, one dealing with liability and one dealing with both liability and duty, will would likely end up before the California Supreme Court if this case was certified as well. And Your Honor is correct. This is not the first or last case. Well, you know, obviously the workers comp is a separate issue from this duty of care. And my question is. On the duty of care, do you think the fact that it is a covid case actually affects whether or not should be certified or is it is there yet another legal principle that you think is unanswered? By California law, that would prompt certification. Well, Your Honor, the fact that it is a covid case, you know, there was doubts whether Snyder applied to covid and we see in C.S. Candy's that it did. The bright line rule in Kessner is a good test. It's in fact a great test because it limits liability while at the same time protecting the household members. There is no logical reason why Kessner should not extend to covid. But to the extent that this court is unsure about whether whether Kessner applies to covid, it should certainly be certified. And the California Supreme Court should rule on this issue. Do you want to reserve? Yes, please. All right. We'll hear from victory. Morning, may it please the court. My name is William Bogdan and I represent the employer respondent Victory Woodworks. As required, the district court paid heed to the instructions that have been laid out by the California Supreme Court and faithfully applied traditional limits to duty and to workers' compensation exclusive remedy for injuries to third parties that derive from the workplace. Appellants here instead ask this court to ignore the Supreme Court's instructions and invite an unprecedented creation of an employer's duty to third parties for spread of an infectious disease, one that exists throughout society and one that is not confined to the workplace. The district court was right to reject plaintiff's novel theories for the novel coronavirus. There are two impediments to allowing plaintiff's litigation trove from becoming a reality. One, the employer owes no legal duty to prevent someone off site from catching a virus from an employee. And two, there is no legal remedy beyond that owed to the injured employee to those he infects other than through workers' compensation. Well, that might that was that was a good argument, it seems to me, until sees candy arrived in the middle of your litigation. And as no fault of anybody's, but perhaps, you know, adds a little texture to the case. And I think you were were candid in your 28-J letter that the case is essentially on the line. You just disagree with the holding, correct? I do disagree with the holding, and we have one division of one appellate district in Los Angeles that has had this opinion issue. That opinion is no more binding than the opinion of any other state or federal appellate court. If the Supreme Court would rule in a different manner. So where there is clear instruction that. The Supreme Court would rule in a different manner, then the court is right in considering reconsidering the issue and looking at it anew. But if, but, you know, this is a question of State law. We have a couple questions of State law here, and that raises a question of whether we should certify it, because if it's on appeal, I mean, normally we would credit even if it's a single division, because it's the only interpretation. And we would be abiding by it, but not necessarily in a precedential opinion, for example. So given. What is a very important public policy question, do you think that both the. These question and the duty question should be certified to the California Supreme Court. I do not, and allow me to explain why, obviously, in a diversity case, we never quite know how the California Supreme Court would rule on any issue, the Supreme Court has not ruled on these specific facts, but it certainly has told us already how to analyze duty and how to analyze exclusive remedy. The C's case court, in fact, purposely invites any court, this court included, to please address the public policy concerns as to whether there is a duty and look at the issue of causation. So the Supreme Court, we may find will very well defer to this court on the issue of exclusive remedy if it chooses to take that question up right now, the question of duty is not live for the California courts and this court should rightly decide the issue. You did mention that we're here in federal court on diversity and I looked at the First Amendment complaint and the notice, the removal notice, I didn't see any amount of controversy listed. Is there. Don't recall one being listed your honor. I don't recall one being listed your honor, but given that the allegations of the medical care provided to Mrs kusama and the fact that if exclusive remedy didn't apply, she would be entitled to her medical expenses, any wage, I don't know if she is employed pain and suffering limited only to the jury's discretion, I think the case qualifies for an exclusive remedy. For the jurisdictional minimum, you do you have a case that says we should just infer it from the facts of the First Amendment complaint as opposed to pleading it as is generally required for removing under the federal statute. Do not have one at hand, your honor. Okay, thank you. Okay. Let me ask a different question. The district, this is a twelve B six and and the district court dismissed the contention that Mrs kusama contracted covid because quote such claims are subject to dismissal for failure to plead a plausible claim. In other words, her concern is, I read the transcript and she said, well, this isn't scientifically possible. Is that appropriate on twelve B six? I mean, you could certainly take it to summary judgment, but I found a little bit odd that basically the district court would dismiss a claim based on facts instead of on the pleadings. Feasibility argument that the court relied on, I think, bounces back to what Kessner instructs us to do in regards to looking at the connection between the defendant's conduct in the industry and injury. Um, the Biley case that Kessner cites at page 1157 says there's no duty where the causal relationship is difficult and tenuous. It's a fundamental concept that plaintiff has to be able to prove that this came from the job. There is no RNA sequencing to identify a specific strain that came from work and not came from San Francisco, not came from outside the gate, came from the job site and that that specific strain infected Mrs. Kusiemba. They have to show a duty for the particular droplet she inhaled. So the judge held and frankly, plaintiffs conceded that there is no way to prove currently that that exists. You can't plead and wait for science to catch up as the judge Chesney instruct. So I wanted to, but essentially, though, she was not not reading the complaint in the light, most favorable to the plaintiffs, assuming it's true, she was making a scientific judgment. I would respectfully disagree. I think the court was evaluating exactly what the California instruction Supreme Court instructed her to consider, which was what's the connection between the conduct in the industry injury? Can you establish that the injury came from the conduct alleged? Right. Well, so what you said in the transcript is apparently the science is that it's less likely to be a cause. And that I find that odd on a 12 B6 for a district court to say this is implausible based on her view of likelihood that science would say that this is transmissible or not transmissible in the manner that the plaintiffs allege. I understand completely in summary judgment, but 12 B6, I find it a little. Well, again, I go back to what the California Supreme Court has instructed us in Kessner, where and we're getting a little ahead of ourselves because we're talking about rolling factors when we don't consider rolling factors unless there is, in fact, a duty. But to address your specific point that the court looked at whether it is feasible and that's the Iqbal standard, are you alleging a claim that can be proved and not from a factual but for cause, but a legal concept of can you establish this claim? Where the statistics that have come out this week, 40 percent of the United States have had COVID. So how do you prove that Mrs. Kusiemba is the unique person in that group who is going to establish the very place that she claims she caught the disease? It's all over. It's ubiquitous. Right. But my only question is because it's a matter of pleading and not a matter of summary judgment. But I take your point and I don't want to chew up any more of your time. Oh, thank you very much. So as I mentioned, appellants leap headlong into the rolling factors without considering whether there's a duty in the first place. Kessner addressed take home liability for asbestos fibers because control of asbestos fell within 1714. They said we're not creating a new duty. It consulted Roland solely to determine whether there was an exception to that pre-existing duty. So the fundamental question is, does civil code section 1714 encompass a disease, something that is not a person's property and creates a duty owed to a third party? This isn't a product like asbestos for commercial gain. It did not originate on the job site. It's of no use for commercial purpose. And it was recognized by Judge Chesney that there's no duty to keep the virus on the property. If it's not a product, then what happens? Well, Kessner tells us, go to see if there's a special relationship. And it goes to Tarasoff. And the Tarasoff line of cases say, well, there's a special relationship for an infectious disease where you're in the medical field. And we're going to graft a third party onto the physician-patient relationship regarding infectious diseases. That's never been extended to the relationship between an employer and employee. If there's no duty existing and there's no special relationship, what does the Supreme Court tell us to do? Don't go to Roland. You go to see if public policy outweighs the traditional remedy of liability. Preferably to exercise ordinary care. It's at page 1150. The court says there is no duty where the social utility of the activity is so great and avoidance so burdensome that it outweighs compensatory and cost internalization of tort law. Now, on social utility, we've already had the declaration that construction is an essential industry. We have direction from the legislature that construction sites need to stay open for society to function. In regards to avoidance being so burdensome, the San Francisco Health Ordinance basically says COVID cannot be avoided. All we can do is give you best practices to be followed when the conditions allow. That's section 9 and section 16 of the health order. So in those situations, basically what San Francisco health officer is saying is it's implicit. People are going to get COVID. We're going to do our best to slow the spread. And I believe Mr. Zarud actually used that phrase during his commentary. But when we get through all of that, what we're kind of boils down to is, is there a public policy exception for a circumstance such as this? And I take your point that asbestos is can generally be localized, but we now have this new phenomenon disease that is in a pandemic situation. What do we really have that we can rely on to determine if there would be a public policy exception because this is such an extraordinary circumstance? And wouldn't that be an issue for California Supreme Court to decide rather than us? Well, in addition to the social utility and avoidance issues, when you don't have a duty, if there were a duty, you look at the burden to the defendant and the consequences of imposing that. You wind up with basically as close as we can get to universal COVID care. Everyone, almost everyone who has been diagnosed with COVID lives with someone who has a job. A prima facie case then becomes for where you live with a worker. There's COVID in that worker workplace and there's COVID at home. Regardless of when or if the employee showed symptoms. So for pleading purposes and to open the door to discovery, you inferred negligence from a diagnosis alone, despite whatever steps the defendant took. In fact, you could have a situation where both people are employed at home and they sue each other's employees. So quickly to cover the second point. Again, the California Supreme Court does not have this issue before it. And this court as sees candy begs this court to address the issue without further delay. I thank you for your time. Thank you, counsel. We'll hear rebuttal. Yes, your honor. Real quick. Kessner does state that it's not limited to being an on-site type situation. That's on page 1159. It's not Ms. Cusiemba doesn't have to be on the employer's premises in order for the employer to have a duty to her. The second, the issue of burden. There is no additional burden on the employer. The burden to protect Mr. Cusiemba is the exact same burden to protect Ms. Cusiemba. The third one is counsel is essentially arguing with our complaint. If the court looks at our complaint, the timeline is quite specific. And in the litigation, all we have to show is more likely than not, this was the source of COVID. This is similar to other causation cases where the defense comes up with, you know, 10 or 20 other places where a plaintiff could have gotten something, for example, cancer. And so this in the same way, it's no different. Let us back into the courthouse, your honors, and let us prove causation that more likely than not, the COVID originated here. But if you read the complaint, which must be accepted as true, everything we alleged is plausible. The timing of the infections, the fact that infected workers were moved into the premises. And then, you know, within the COVID incubation time, Mr. Cusiemba gets COVID. And within the incubation time, Ms. Cusiemba gets COVID. And they're both extremely careful. And we pled that in our complaint. So the court must accept that as true. It's plausible. And all we're saying is the employer just had to follow the duty of care established in the health order. And because it failed to do so, because it wanted to make money, because it didn't want to quarantine workers, it brought COVID into the premises. It brought COVID into the workplace. And then failed to control COVID as it was legally required to do by the San Francisco health order. And that order stated, yes, you're an essential business. Yes, you can proceed. But you must, you must follow the health care orders. And they're asking for a free pass, essentially. Being able to do their business, make money as an essential business. But disregard health care orders. Thank you. Thank you, counsel. The case just argued will be submitted for decision. And we'll proceed to the last case on our oral argument calendar.
judges: WALLACE, THOMAS, McKEOWN